1   GAIL SHIFMAN (State Bar No. 147334)
    Law Office of Gail Shifman
2   2431 Fillmore Street
    San Francisco, California 94115-1814
3   Telephone:    (415) 551-1500
    Facsimile:    (415) 551-1502
4   Email:        gail@shifmangroup.com

5   Attorney for Defendant
    ANDY REANOS-MORENO

6

7                   UNITED STATES DISTRICT COURT

8                 NORTHERN DISTRICT OF CALIFORNIA

9                    SAN FRANCISCO DIVISION

10

11  UNITED STATES OF AMERICA,          )  Case No.:  CR 19-0381 CRB
                                       )
12                     Plaintiff,      )  **MOTION TO REVOKE DETENTION**
                                       )  **ORDER**
13          vs.                        )
                                       )  Date:  October 16, 2019
14  ANDY REANOS-MORENO,                )  Time: 1:00 p.m.
                                       )  Court: Hon. Charles R. Breyer
15                     Defendant.      )
                                       )
16  ─────────────────────────────────)

17                          **INTRODUCTION**

18      Andy Reanos-Moreno ("Andy"), 24 years old, with no prior convictions and a legal

19  permanent resident, seeks an order revoking the detention order[1] and release to a halfway house

20  with electronic monitoring, on a $100,000 bond signed by a qualified surety as recommended by

21  Pretrial Services (PTS).  With bond conditions such as these, Andy is not a risk of flight[2].

22      The indictment charges Andy with one count of Conspiracy to Possess with Intent to

23  Distribute Methamphetamine, a 5-year mandatory minimum.  This is not a presumption case.

24  ────────────────────────

25

26  [1] No written findings or order were entered by the Court, contrary to 18 U.S.C. § 3142(i)(1). See,
    *United States vs. Westbrook,* 780 F.2d 1185 (5th Cir. 1986) (order must make specific factual
27  findings); See, *United States vs.* Quinnones, 610 F. Supp. 74 (S.D.N.Y. 1985) (failure of magistrate to
    enter written order resulted in defendant's release).

28  [2] The government did not contend that Andy is a danger, and indeed, he is not.  He has no prior
    convictions and no weapons were used or seized during the course of this 2+ year investigation.

MTN. TO REVOKE DTN. ORDER

1    At the detention hearing conducted on August 21, 2019, as PTS recommended, a qualified

2    surety, Ms. Kari Solem, was present and prepared to sign onto the bond however the Magistrate

3    Judge determined that Andy should be detained based in large part upon speculation, and the

4    application of an incorrect standard apparently under the  guise of the surety's geographic

5    location limiting her ability to supervise Andy, to "keep[ing] an eye on him", - which is *not the*

6    *legal standard* or the function of a surety, and facts outside of this case – that an unknown person

7    had left a halfway house without permission the prior day – which is inappropriate.

8    Ms. Solem, a life-long California resident who resides in Ukiah, is the 35-year owner of

9    Advance Tech Collison, three auto repair body shops.  At the hearing, she stated unequivocally

10   that she understood the charges against Andy and the potential penalties he faced, and that she

11   remained committed to signing onto the bond.  Through her business, she runs an apprentice

12   program which helps people learn the auto body repair trade.  Ms. Solem has known Andy for

13   approximately five years and has spoken to him weekly, either directly or though his sister.  And,

14   though she repeated throughout that she remained committed to signing onto the bond as surety,

15   the Magistrate Judge seemed to view Ms. Solem as somehow not understanding the nature of the

16   charges or penalties and not being sufficiently "aware" of what she was doing.  In fact, Ms.

17   Solem remains available to sign onto the surety bond.  *See,* August 21, 2019 transcript of

18   detention hearing, attached as Exhibit A.

19                                              **BACKGROUND**

20   Andy was born in Honduras but at the age of 10 years, later lawfully immigrated to the

21   United States through the Casa et Sol program.  He is presently a Legal Permanent Resident.

22   When he first arrived in the United States, he resided in Michigan where the youth immigration

23   program was based, then moved to Texas with a continuing immigration program, eventually

24   moving to the Bay Area where he has continued to reside. While his mother lives in Honduras,

25   and he has visited her in the past for the Christmas holiday, the bulk of his family, his three (3)

26   sisters and brother live in the Bay Area.

27   Andy has a work history that includes laboring for a roofing and scaffolding company,

28   working in construction as well as at Hog Island.  At the detention hearing, much was made of

MTN. TO REVOKE DTN. ORDER

1    the fact that the location of Andy's passport was unknown because law enforcement had not

2    seized it upon his arrest however as the defense proffered, Andy's landlady had cleaned out the

3    apartment he had been renting and had retained his passport and will be provided to PTS if Andy

4    is released.

5                                    **ARGUMENT**

6    **I.      Legal Standard and Burden of Proof under Bail Reform Act**

7          Under the Bail Reform Act, 18 U.S.C. § 3142 et seq., a criminal defendant is entitled to

8    have a magistrate judge's detention order reviewed by "the court having original jurisdiction over

9    the offense."  18 U.S.C. § 3145(b). This Court reviews the magistrate judge's detention order de

10   novo. *United States v. Howard*, 793 F.3d 113 (9th Cir. 2015) (review of district court's

11   revocation of a pretrial release order); *United States v. Koenig,* 912 F.2d 1190, 1191 (9th Cir.

12   1990). As such, the Court is to "review the evidence before the magistrate and make its own

13   independent determination whether the magistrate's findings are correct, with no deference."

14   *Koenig,* 912 F.2d at 1193. "If the performance of that function makes it necessary or desirable for

15   the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is

16   not limited to occasions when evidence is offered that was not presented to the magistrate."  *Id.*

17   (citation omitted).

18         Pursuant to the procedures set forth in 18 U.S.C. § 3142, criminal defendants are ordinarily

19   entitled to release before trial. *See United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir.

20   1985). Moreover, pursuant to that statute, an accused person shall be released pretrial on the

21   "least restrictive" combination of conditions that "will reasonably assure the appearance of the

22   person as required and the safety of any other person and the community." 18 U.S.C. §

23   3142(c)(1)(B). Only in "rare circumstances" may a court order a defendant detained pending

24   trial. *Motamedi,* 767 F.2d at 1405. These circumstances are limited to those in which a judge

25   finds that "no condition or combination of conditions" will (1) "reasonably assure" the

26   appearance of the person at trial, and (2) "reasonably assure" the safety of the community. 18

27   U.S.C. § 3142(e); *see also United States v. Chen,* 820 F. Supp. 1205, 1208 (N.D. Cal. 1992)

28   ("Section 3142 does not seek ironclad guarantees, and the requirement that the conditions of

MTN. TO REVOKE DTN. ORDER

1  release 'reasonably assure' a defendant's appearance cannot be read to require guarantees . . . .")

2  (citations omitted).

3       Along these lines, a magistrate judge does not have discretion to detain a defendant pretrial

4  unless the case fits within one of the following enumerated categories under § 3142(f):  a charged

5  crime of violence, § 3142(f)(1)(A); a charged offense with a maximum sentence of life

6  imprisonment, § 3142(f)(1)(B); a controlled substance offense with a maximum sentence of ten

7  years or more, § 3142(f)(1)(C); any charged felony if the defendant has two or more prior

8  convictions of the type identified in subsections (A) through (C), § 3142(f)(1)(D); any charged

9  felony involving a minor victim, a firearm or failure to register as a sex offender, § 3142(f)(1)(E);

10  or a case where there is "a serious risk" that the defendant will flee, obstruct justice or threaten a

11  witness, § 3142(f)(2)(A)-(B).

12       None of these enumerated categories are present here.

13       Thus, the government here bears the heavy burden of proving that Andy poses "serious

14  risk" of flight or danger to the community and then that there is no combination of conditions that

15  will reasonably assure his appearance in court. *See* 18 U.S.C. § 3142(e)-(f); *see also Motamedi,*

16  767 F.2d at 1406-07. Pretrial release in this case therefore "should be denied only for the

17  strongest of reasons." *Motamedi,* 767 F.2d at 1407 (citation omitted).

18       The government bears the burden of showing by a preponderance of the evidence that the

19  defendant poses a flight risk. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). In

20  determining whether the government has met its burden, the Court is required to take into

21  account the following factors:

22

23      (1) The nature and circumstances of the offense charged . . .;
    (2) the weight of the evidence against the person;
    (3) the history and characteristics of the person, including—

24      (A) the person's character, physical and mental condition, family ties,
employment, financial resources, length of residence in the community,

25  community ties, past conduct, history relating to drug or alcohol abuse,
criminal history, and record concerning appearance at court

26  proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was

27  on probation, on parole, or on other release pending trial, sentencing,
appeal, or completion of sentence for an offense under Federal, State,

28  or local law; and
    (4) the nature and seriousness of the danger to any person or the

MTN. TO REVOKE DTN. ORDER

1     community that would be posed by the person's release. . ..

2   18 U.S.C. § 3142(g).

3     Significantly, the "weight of the evidence" in support of the charge against the defendant

4   "is the least important of the various factors." *Motamedi*, 767 F.2d at 1408. Moreover,

5   "[a]lthough the statute permits the court to consider the nature of the offense and the evidence of

6   guilt, the statute neither requires nor permits a pretrial determination that the person is guilty."

7   *Id.* (citation omitted).

8   **II.     The Burden has not Been Met for Detention**

9     The decision of the magistrate judge to detain Andy pretrial, rather than placing him in a

10   halfway house, is not supported either by the law or by the facts in this case.

11     Here, Andy's ability to flee is mitigated by the fact that he has no passport thereby

12   preventing his ability to go back to Honduras, a country he moved away from more than 14 years

13   ago, and to which he does not seek to return to live.  Honduras, long one of the poorest countries

14   in Latin America is now also among the most violent and crime ridden. The State Department

15   lists Honduras as a country that should not be traveled to because of its violent crime, such as

16   homicide and armed robbery which is common. The Department states that violent gang activity,

17   such as extortion, violent street crime, rape, and human trafficking, is widespread. And, that it is

18   a place where local police and emergency services lack sufficient resources to respond effectively

19   to serious crime.

20     His ties are to this community, where he has lived for years and where his siblings live.

21   Moreover, the government's proffer that Andy's sisters were suspected to be engaging in drug

22   trafficking was a conclusory, generic, assertion.  In fact, in a police report provided by the

23   government, it indicated only that one sister, Karol was present in a car driven by the father of

24   her children that got stopped, and the rear passenger was arrested and charged with a drug

25   offense for drugs that were located in his backpack behind the driver's seat.  Karol, a passenger

26   in the front seat was not cited or charged; she neither possessed any drugs, drug paraphernalia or

27   cash and she was never observed to be engaged in any criminal activity.  She was released.

28     And, the argument that his sisters were seen in the Tenderloin is meritless.  Countless

MTN. TO REVOKE DTN. ORDER

1    people are seen traveling through the Tenderloin daily going to/from work and BART.

2    Moreover, had his sisters actually been engaging in drug trafficking, undoubtedly, they would

3    have been arrested and charged particularly where, as here, we have federal indictments against

4    more than 40 Hondurans allegedly engaging in drug trafficking in the Tenderloin and another

5    40+ white and black people arrested during the same operation but charged in state court.

6        And, finally, the notion that Andy has access to cash is unfounded.  Andy lived in an

7    apartment with at least three others.  During a search of the apartment incident to their arrests,

8    approximately $28,000 was seized.  The government seeks to forfeit that money from all the

9    people who lived in the apartment.  There is **no** evidence that any other money or any access to

10   any cash exists.  Andy qualified for appointment of counsel pursuant to the CJA.  His family is

11   poor.  The evidence is that whatever money may have once existed is now in the hands of the

12   government.

13       With respect to the factual underpinnings of the detention order, it is understandable that

14   the magistrate judge would be concerned about risk of flight, but the government did not

15   definitively establish that there is a "serious risk" that Andy would flee.  And, the magistrate

16   judge did not explain why a combination of conditions including placement in a halfway house

17   with electronic monitoring, would not at least "reasonably assure" the appearance of Andy in

18   court. On balance, the Court should hold that this case is not one of the most "rare

19   circumstances" in which a defendant should be detained pending trial, particularly where, as here,

20   trial is not likely until 2021 at the earliest.

21                                   **CONCLUSION**

22       For the aforementioned reasons, the Court should revoke the magistrate judge's order of

23   detention and instead order that Andy be released to a halfway house with electronic monitoring

24   upon signature of Kari Solem to the bond.

25   Dated:  October 11, 2019                    Respectfully submitted,

26                                               /s/ Gail Shifman

27                                               _____

28                                               GAIL SHIFMAN
                                                 Attorney for Defendant

MTN. TO REVOKE DTN. ORDER