Christina A. DiEdoardo (SBN 258714)
**The Matian Firm, APC**
111 N. Market Street, Suite 888
San Jose, California 95113
Tel (408) 516-1208
Fax (408) 516-1209
christina@matianlegal.com
Attorney for Defendant

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDY MANUEL REANOS-MORENO<br>Defendant. | Case No. 0971 3:19CR00381-001 CRB<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>Judge: Hon. Charles R. Breyer<br>Sentencing Date: June 10, 2022<br>Time: 11:00 a.m. |
|---|---|

### I.   Introduction

While Mr. Reanos-Moreno does not generally dispute the factual allegations set forth in the pre-sentence investigation report (CM/ECF Dkt. 372) and the Sentencing Memorandum submitted by the United States (CM/ECF Dkt. 378), he would respectfully like to draw the Court's attention to and respectfully request its consideration of certain personal characteristics specific to him prior to the Court's imposition of sentence in this case.

### II.   Applicable Law

Since the United States Supreme Court's decision in U.S. v. Booker 543 U.S. 220, 125 S. Ct. 738 (2005) which held 18 U.S.C. 3553(b)(1) unconstitutional and made the Federal Sentencing Guidelines advisory rather than mandatory, district courts must follow a three-step process before they may impose sentence on a defendant, set forth as follows: ":(1) calculate the appropriate Guidelines range, including

1

the offense level and criminal history category of the defendant; (2) consider any applicable departures under § 5H or § 5K of the Guidelines; and (3) consider the factors enumerated in 18 U.S.C. § 3553(a). U.S. Sentencing Guidelines Manual § 1B1.1 (2014); see also United States v. Lee, 725 F.3d 1159, 1165 n. 5 (9th Cir.2013) (per curiam) (same). The Supreme Court has held that even though the Sentencing Guidelines are advisory only, district courts must use the Guidelines as the "starting point" for determining a sentence. See, e.g., Gall v. United States, 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). While the district court may impose a sentence outside the Guidelines range, 'it may not manipulate the calculations under the Sentencing Guidelines in order to produce a Guidelines range that will allow it to impose the sentence it prefers.' Lee, 725 F.3d at 1164." United States v. Rosales-Gonzales, 801 F.3d 1177, 1180–81 (9th Cir. 2015).

Accordingly, the Court has the discretion, absent a countervailing statutory minimum, to depart from the sentence suggested by the Guidelines so long as it complies with the procedure set forth above.

### III. Argument

#### a. Mr. Reanos-Moreno is entitled to a downward departure based on his status as a survivor of child physical and sexual abuse pursuant to Walter and Roe

It is well-settled in this Circuit that a sentencing Court may consider the effects of child physical and sexual abuse if the level of that abuse is deemed to be extraordinary. *See generally* United States v. Walter, 256 F.3d 891, 894 (9th Cir. 2001) and United States v. Roe, 976 F.2d 1216, 1218 (9th Cir. 1992).

In Mr. Reanos-Moreno's case, he disclosed during his interview for the PSR that because of his family's poverty he had to work from the age of six in order to help provide food for his family when they were living in Honduras (PSR Dkt 372, p. 13).  When his parents were displeased with him, they would hit him using "sticks or wires and would leave marks on him." (PSR Dkt. 372, p.13). Furthermore, when Mr. Reanos-Moreno was eight years old, he was sexually assaulted by his next-door-neighbor (PSR Dkt. 372, p. 14).

Presumably, due at least in part to these traumas, Mr. Reanos-Moreno dropped out of school in the sixth grade and began to associate with a local gang. At twelve, apparently as a result of a gang-related altercation, a bullet grazed his back. (PSR Dkt. 372 p. 14). Fearing for his life, he left Honduras and traveled to the United States, only to be kidnapped and held for ransom by a gang in Mexico for three months. (PSR Dkt. 372, p. 14). Mr. Reanos-Moreno was only released after his family paid a $2,000 ransom. (PSR Dkt. 372, p. 14).

Thus, in his first fourteen years of life, Mr. Reanos-Moreno was a victim of what would likely be considered felony child abuse if committed in any American jurisdiction, not to mention sexual assault, assault with a deadly weapon and kidnapping. There appears to be no reasonable doubt that this is exactly the kind of "extraordinary" abuse the Ninth Circuit had in mind in Walter and Roe.[1]

b. **Mr. Reanos-Moreno Contracted COVID-19 Multiple Times While Incarcerated and Is Entitled to A Downward Departure Under §5H1.4**

Mr. Reanos-Moreno has been in custody at the Santa Rita Jail since on or about August 6, 2019, when he was arrested by Drug Enforcement Administration agents during a raid. As this Honorable Court and all parties are sadly well-aware, the Santa Rita facility became one of the Bay Area's main hotspots for the transmission of COVID-19 once the pandemic began in early 2020. Indeed, like many defendants, Mr. Reanos-Moreno has had various key portions of his case continued on several occasions because he was either ill with COVID-19 or his housing unit was on lockdown due to a suspected COVID-19 outbreak.

The Court has, in certain published and unpublished cases, either awarded a temporary or permanent release to prisoners at Santa Rita who were especially vulnerable to COVID-19 infection, *see*

---

[1] While the PSR does not take a position on this question, it does note that "Pursuant to 18 U.S.C. § 3553(a)(1), the sexual abuse reported by Mr. Reanos-Moreno, and his kidnapping during his migration to the United States may be taken into consideration as factors in mitigation." (PSR Dkt. 372, p. 20).

3

*generally* United States v. Garcha, 445 F. Supp. 3d 93, 97 (N.D. Cal. 2020), United States v. Lee, 445 F. Supp. 3d 272, 273 (N.D. Cal. 2020), United States v. Daniels, No. 19-CR-00709-LHK, 2020 WL 10731886, at *2 (N.D. Cal. Sept. 28, 2020), so there appears to be no dispute about the risk of harm the virus can inflict, particularly on individuals who are infected on multiple occasions with different strains, as Mr. Reanos-Moreno apparently was.

While the long-term effects on those who have suffered COVID-19 infection are still being determined, the current state of the art is not encouraging. In July 2021, the Department of Health and Human Services issued guidance that those suffering from "long COVID" could be eligible for protection under the Americans with Disabilities Act[2]. Based on what we currently know about the effects of COVID-19 and Mr. Reanos-Moreno's multiple infections with the disease while in custody, a downward departure based on the degradation of his physical condition attributable to being infected with COVID-19 while in custody under §5H1.4 respectfully appears appropriate.

### IV. Conclusion

According to the PSR, Mr. Reanos-Moreno's adjusted offense level is 33, resulting in a Guideline sentence of 135-168 months, of which they are requesting a downward variance to 86 months (PSR, Dkt 372, p. 22). The Department of Justice, while it does not disagree with either the offense level or Mr. Reanos-Moreno's criminal history, recommends a 115-month sentence, primarily based on its contention that Mr. Reanos-Moreno was the lead figure in the conspiracy (DOJ Sentencing Memorandum, Dkt, 378, p. 5, ln. 3-p. 11, ln. 8).

---

[2] "Guidance on "Long COVID" as a Disability Under the ADA, Section 504, and Section 1557", U.S. Department of Health and Human Services, July 26, 2021, Available at https://www.hhs.gov/civil-rights/for-providers/civil-rights-covid19/guidance-long-covid-disability/index.html#footnote10_0ac8mdc (Accessed June 5, 2022)

However, as the Department of Justice notes, there is no evidence that Mr. Reanos-Moreno or any of his dealers carried or used firearms during the pendency of the conspiracy (DOJ Sentencing Memorandum Dkt 378, p. 10, ln. 21-24) and that—according to the government—the primary way he exercised control over street dealers was to allow them to stay in properties he rented, with the dealer paying less than the market rate as long as they sold narcotics (DOJ Sentencing Memorandum Dkt. 378 p. 8, ln 1-9).

While there admittedly may be an element of coercion in this arrangement, there is no allegation that Mr. Reanos-Moreno coerced anybody into dealing street drugs against their will. If someone did not want to meet his conditions, they could vacate (or not occupy) the properties he rented. This seems less an indication of his purported criminal sophistication and more a recognition of the fact that the tight market for housing in the Bay Area—especially in San Francisco and Oakland—made a scheme like this possible. Obviously, Mr. Reanos-Moreno did not *create* those unfavorable housing conditions, any more than he conjured up the demand for heroin and cocaine in the Tenderloin and Oakland.

The defense understands the United States' argument that the sentence for the leader of a criminal organization should be more substantial than that imposed on the lieutenants or the foot soldiers. However, in *this* case the United States points out that this Court sentenced Mr. Reanos-Moreno's assistant to 36 months in custody, while the leaders of a comparable (though not as extensive, in the government's mind) drug trafficking ring got 60 months and 48 months, respectively (DOJ Sentencing Memorandum Dkt. 378, p, 10, ln. 27-p. 11, ln, 4).

Even if Mr. Reanos-Moreno had no arguments in favor of mitigation, a sentence of almost twice what his counterpart received (and almost four times what his key co-conspirator got) respectfully seems inconsistent with justice.  Given the extraordinary levels of child abuse Mr. Reanos-Moreno suffered, as

described in Section III (a), above, as well as the injuries to his physical condition due to repeated COVID-19 infection while in custody, a downward departure is more than warranted.

In this case, the defense respectfully recommends that the Court, relying on 18 U.S.C. § 3553(a)(1), <u>Walter</u>, <u>Roe</u> and §5H1.4, depart downward six levels for a revised offense level of twenty-seven. This would result in a Guideline sentence of 70-87 months and the defense recommends a 72-month sentence. This would reflect the mitigating factors of being a survivor of extraordinary physical and sexual abuse as a child, as well as his repeated COVID-19 infections while in custody, while at the same time imposing a sentence that is double what his main co-conspirator received, thereby meeting the government's deterrence objective.

Respectfully submitted this 5th day of June 2022

/S/Christina A. DiEdoardo
Christina A. DiEdoardo (SBN 258714)
The Matian Firm, APC
111 N. Market Street, Suite 888
San Jose, California 95113
Tel (408) 516-1208
Fax (408) 516-1209
christina@matianlegal.com
Attorney for Defendant